BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
tcarpenter@carlsonlynch.com

Attorneys for Plaintiff

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AMANDA HOLMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

APPLE INC., a California corporation,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

BLOOD HURST & O'REARDON, LLP

Plaintiff Amanda Holman ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this action against Apple Inc. ("Apple" or "Defendant"), and alleges as follows:

**NATURE OF THE CASE**

1. On December 20, 2017, Apple admitted to purposefully slowing down or "throttling" the processing speed of its iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone 7 and iPhone 7 Plus (the "Subject iPhones"). Apple was able to slow down the performance of the Subject iPhones by encouraging consumers to download Apple's "iOS" software updates that secretly contained code linking iPhone processing speed with battery capacity. By intentionally crippling the Subject iPhones through the secret software update link, Apple has slowed down the performance of almost every major feature of the smartphones, including making the phones unnecessarily slow at ordinary tasks such as launching apps, updating apps, loading webpages, and responding to inputs like scrolling and swiping.

2. Instead of disclosing to unsuspecting consumers that replacing the iPhone battery will restore your iPhone's performance speed and functionality, Apple secretly chose to cripple the performance speed of the Subject iPhones. Because of Apple's misconduct, consumers are left with a poor and slowly performing smartphone, which also leads many consumers to naturally purchase a newer model iPhone for upwards of $1,000. Apple's unilateral and secretive actions enriches Apples by both obscuring and deterring Subject iPhone owners from taking a simple and less costly measure to restore performance of their property, and deprives Subject iPhone owners of the smartphone performance which was promised by Apple and expected by reasonable consumers.

3. Plaintiff brings this class action on behalf of herself and similarly situated buyers of Subject iPhones, and alleges claims for violation of California consumer protection laws and common law to obtain redress for those who have purchased Subject iPhones and to enjoin Apple's unlawful conduct alleged herein.

**JURISDICTION AND VENUE**

4. The Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the class are citizens of states different from Defendant.

5. This Court has personal jurisdiction over Defendant because Defendant is authorized to and does conduct business in California. Defendant has marketed, promoted, distributed, and sold the Subject iPhones in California, and Defendant's primary place of business is in California, rendering exercise of jurisdiction by California courts permissible.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District and is a resident of this District.

7. Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c)-(d), and 3-5(b), Defendant is headquartered in Santa Clara County, this action otherwise arises in Santa Clara County, and it is therefore appropriate to assign this action to the Santa Clara Division.

**PARTIES**

8. Plaintiff Amanda Holman resides in San Francisco, California. Plaintiff purchased an iPhone 6 Plus (64 GB) in 2016. Ever since her phone was updated with iOS software version 10.2.1 in or around January or February 2017, her phone has exhibited significantly slower processing speeds, apps freeze and take longer to open and update, the phone responds slowly to inputs and lags, and the overall performance has deteriorated substantially.

9. Defendant Apple Inc. is a California corporation headquartered in Cupertino, California. Defendant markets and sells the Subject iPhones in its own retail stores located throughout the country, online, and also through third parties, such as AT&T. Defendant engineers and licenses iOS software to iPhone users, the only operating system Apple permits on its devices.

BLOOD HURST & O'REARDON, LLP

## FACTUAL BACKGROUND

10. Apple is the only smartphone manufacturer to control every aspect of its product design—both hardware and software.

11. Apple purposefully and secretly planted code into operating system updates that was designed to degrade the performance of the older Subject iPhones after newer iPhone models were introduced as part of a strategy to induce its customers to purchase newer iPhones.

12. Apple's iPhone 6 and iPhone 6 Plus were released on September 19, 2014. At the time of launch, the iPhone 6 was available to those committing to a 2-year service contract for $199 (16GB variant), $299 (64 GB variant), and $399 (128 GB variant), and was available off-contract for $649.92 (16 GB variant), $749.91 (64 GB variant), and $849.90 (128 GB variant). The iPhone 6 Plus was available to those committing to a 2-year service contact for $299 (16 GB variant), $399 (64 GB variant), and $499 (128 GB variant), and off-contract for $749.76 (16 GB variant), $849.99 (64 GB variant), and $949.99 (128 GB variant).

13. Apple's iPhone 6S and iPhone 6S Plus were released on September 25, 2015. At the time of launch, the iPhone 6S cost $649 (16GB variant), $749 (64GB variant), and $849 (128GB variant), and the iPhone 6S Plus cost $749 (16GB variant), $849 (64GB variant), and $949 (128 GB variant).

14. Apple's iPhone 7 and iPhone 7 Plus were released on September 16, 2016. At the time of launch, the iPhone 7 cost $649 (32 GB variant), $749 (128 GB variant), and $849 (256 GB variant), and the iPhone 7 Plus cost $749 (32 GB variant), $849 (128 GB variant), and $949 (256 GB variant).

15. iOS is the mobile operating system developed by Apple exclusively for its hardware, including iPhones and iPads. Apple provides major updates to the iOS operating system annually. For example, iOS 10, the successor to iOS 9, is the tenth major release of the iOS mobile operating system. iOS 10 was released on September 13, 2016, and was succeeded by iOS 11 on September 19, 2017. In between annual iOS releases, Apple releases additional

updates (*e.g.*, iOS 10.01, 10.02, 10.03, etc.), including to ostensibly fix bugs and improve aspects of iPhone performance.

16. On January 23, 2017—four months after the launch of the iPhone 7 and iPhone 7 Plus—Apple released iOS version 10.2.1. Shortly thereafter, iPhone users were notified that an update to iOS was available. Apple encouraged and represented to consumers that 10.2.1 should be downloaded because it "includes bug fixes and improves the security of your iPhone or iPad":



iOS 10.2.1
Apple Inc.
72.1 MB

iOS 10.2.1 includes bug fixes and improves the security of your iPhone or iPad.

For information on the security content of Apple software updates, please visit this website: https://support.apple.com/en-gb/HT201222

17. As with Apple's other iOS updates, the iOS update prompt and Apple's representation about its purpose appears on the iPhone itself and is a representation to which all iPhone users are exposed and told follow in order to accept and download the update.

18. Apple's description of the scope and purpose of iOS version 10.2.1 was false and deceptive. Unbeknownst to iPhone 6, iPhone 6 Plus, iPhone 6S, and iPhone 6 Plus owners, Apple misrepresented a material purpose of the update and did not disclose that it had inserted code into the iOS version 10.2.1 that would dramatically slow down the processing performance of these phones by linking each phone's processing performance with its battery health.

19. Nowhere in its representations did Apple disclose that iOS version 10.2.1 was incompatible with and would impair or degrade the Subject iPhone's performance and speed.

To the contrary, Apple prompted Subject iPhone owners to download iOS version 10.2.1 in order to obtain "fixes and improve[ments]."

20. Absent the malicious code inserted by Apple into iOS version 10.2.1, the battery capacity of the Subject iPhones would not have negativity affected processing performance.

21. Apple's iPhone 8 and iPhone X were released on September 22, 2017, and November 3, 2017, respectively.

22. On December 2, 2017, iOS version 11.2.0 was released. Shortly thereafter, Apple notified iPhone users that the iOS update was available. On the Subject iPhones themselves, Apple represented as follows regarding the update:



iOS 11.2
Apple Inc.
430.7 MB

iOS 11.2 introduces Apple Pay Cash to send, request and receive money from friends and family with Apple Pay. This update also includes bug fixes and improvements.

For information on the security content of Apple software updates, please visit this website:
https://support.apple.com/en-gb/HT201222

23. Apple's description of the scope and purpose of iOS version 11.2 was false and deceptive. Unbeknownst to iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone 7, and iPhone 7 Plus owners, Apple misrepresented a material purpose of the update and failed to disclose that it again inserted code into the iOS version 11.2.0 that dramatically slowed down the processing performance of these phones by linking each phone's processing performance with its battery health.

24. Nowhere in its representations did Apple disclose that iOS version 11.2 was incompatible with and would impair or degrade the Subject iPhone's performance and speed. To the contrary, Apple prompted Subject iPhone owners to download iOS version 11.2 in order to obtain "fixes and improvements."

25. On December 9, 2017, a post appeared on the website Reddit that offered evidence that simply replacing the battery on an older iPhone restores the performance of older iPhones. In response, commenters speculated that, in fact, Apple was secretly throttling the performance speed of older iPhones through software "updates".

26. On December 18, 2017, John Poole, co-founder of Primate Labs, published iPhone testing results that connected Subject iPhone's slow performance to battery capacity in certain iOS software versions. Poole found that the performance deterioration arose when iOS software version 10.2.1 (or later) was installed in iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, and iPhone SE. Poole also found performance deterioration arose when iOS software version 11.2 (or later) was installed in iPhone 7 or iPhone 7 Plus.

27. Only after Poole's revelation did Apple admit that it had been developing and introducing code to its customers intended to secretly throttle the processing speed of the Subject iPhones. Apple states that it did nothing wrong and that it intends to continue to include throttling code in future iOS updates.

28. The processing speed of iPhones should not normally diminish as a function of battery capacity. As Poole observes, "While we expect battery capacity to decrease as batteries age, we expect processor performance to stay the same." Because of Apple's intentional and secretive conduct, once the battery condition of Subject iPhones reaches a certain state, processing speeds slow dramatically.

29. Apple secretly and without authorization diminishes the performance of Plaintiff's and the Class members' phones to induce them to buy newer models. This triggering of the older Subject iPhones with a switch that slows processor speed to a crawl is but one of the many ways Apple achieves this end. Apple employs other means of accomplishing this end by delivering software updates that in other ways unjustifiably diminishes the performance of older model iPhones. This course of conduct is unfair, deceptive, in bad faith, and injures Plaintiff and the other Class members, and unjustly enriches Apple at their expense.

30. Plaintiff installed iOS 10.2.1 on her iPhone 6 Plus, and as a result, her iPhone's performance deteriorated substantially. Apps take unduly long to open, update, and respond to

inputs such as swiping and scrolling lag. Websites crash and take too long to load. Plaintiff had not experienced such deterioration until installing the update. The performance of Plaintiff's iPhone 6 Plus has not improved with subsequent software installations. Plaintiff's iPhone 6 Plus now runs iOS 11.2.0, and it still performs in a deficient and deteriorated manner.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a proposed Nationwide Class defined as:

> All persons in the United States who purchased or leased any one of the following models of iPhone: iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone 7 and iPhone 7 Plus.

32. In the alternative to the Nationwide Class, Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a proposed California Class defined as:

> All persons in California who purchased or leased any one of the following models of iPhone: iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone 7 and iPhone 7 Plus.

33. Excluded from the Classes are Defendant, its parents, affiliates, subsidiaries, and entities in which Defendant has a controlling interest, as well as Defendant's officers, directors, legal representatives, heirs, predecessors, successors, and assigns, and the judicial officers presiding over the case.

34. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

35. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has sold many thousands of Subject iPhones to Class members.

36. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. whether Apple intentionally hinders performance of the Subject iPhones with the installation of certain software;

b. whether a reasonable consumer expects the performance of the Subject iPhones to deteriorate with new software updates;

c. whether Apple violated California's Consumers Legal Remedies Act;

d. whether Apple violated California's Unfair Competition Law;

e. the extent of the damages and harm suffered by Plaintiff and the other Class members;

f. whether Apple's above-described uniform wrongful actions, inaction, omissions, and deceptive conduct caused Plaintiff and the other Class members to suffer damages;

g. whether injunctive relief in the form of a software update removing the code that causes the processor performance deterioration is appropriate;

h. whether injunctive relief in the form of corrective advertising is appropriate;

i. whether Plaintiff and the other Class members are entitled to recover actual damages, consequential damages, incidental damages, statutory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, litigation expenses, and court costs and, if so, the amount of the recovery.

37. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and no defense is available to Defendant that is unique to Plaintiff.

38. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because she will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class they seek to represent, and have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse or antagonistic to those of the Class.

39. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

40. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of the Consumers Legal Remedies Act – Civil Code §§1750, *et seq.*

41. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

42. Apple is a "person," under Cal. Civ. Code §1761(c).

43. Plaintiff and Class members are "consumers," as defined by Cal. Civ. Code §1761(d), who purchased or leased one or more Subject iPhones.

44. Defendant's conduct, as described herein, in misrepresenting the capabilities and performance of the Subject iPhones, as well as the nature and purposes of the iOS updates, and omitting to disclose that the iOS updates contained software code designed to slow and impair the Subject iPhone's performance capabilities, violates the California Consumers Legal



BLOOD HURST & O'REARDON, LLP

00130037

Remedies Act ("CLRA"), Cal. Civ. Code §§1750, *et seq*. Specifically, Defendant violated the CLRA by misrepresenting and omitting material facts as it relates to the Subject iPhones and the iOS updates, and by engaging in the following practices proscribed by Civil Code §1770(a) in transactions that were intended to result in, and did result in, the sale or lease of goods or services:

a. Representing that goods or services have…characteristics,…uses, [or] benefits,…which they do not have (Civil Code §1770(a)(5));

b. Representing that goods or services are of a particular standard, quality, or grade…if they are of another (Civil Code §1770(a)(7));

c. Advertising goods or services with intent not to sell them as advertised (Civil Code §1770(a)(9)); and

d. Representing that goods or services have been supplied in accordance with previous representations when they have not (Civil Code §1770(a)(16)).

45. Defendant violated the CLRA by representing and failing to disclose material facts, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

46. Pursuant to Civil Code §1782(d), Plaintiff, individually and on behalf of the other members of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant, ordering Defendant to extend repair and replacement remedies to all Class members, and awarding restitution and disgorgement.

47. Pursuant to §1782 of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit A.

48. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the CLRA, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

49. Defendant's conduct is fraudulent, wanton, and malicious.

50. Pursuant to §1782(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum

**COUNT II**

**Violation of Business & Professions Code §§17200, *et seq*.**

51. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

52. The Unfair Competition Law, Business & Professions Code §§17200, *et seq*. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

53. In the course of conducting business, Defendant committed unlawful business practices by, among other things, transmitting code to harm and impair the Subject iPhones and making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16) and Business & Professions Code §§17200, *et seq*., 17500, *et seq*., and the common law. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of the law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

54. In the course of conducting business, Defendant committed "unfair" business practices by, among other things, purposefully hampering the speed and performance of Subject iPhones, and making the representations and omissions of material facts regarding the Subject iPhones and iOS updates, as alleged. There is no societal benefit from depriving Plaintiff and other Class members of the benefit of their bargain, and such false and misleading representations and omissions. There is only harm. While Plaintiff and the other Class members were harmed by this conduct, Defendant was unjustly enriched. As a result, Defendant's conduct is "unfair" as it has offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55. Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in unfair competition, deceptive conduct towards consumers, and false and misleading advertising. This conduct constitutes violations of the unfair prong of Business & Professions Code §§17200, *et seq*. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

56. Business & Professions Code §§17200, *et seq*., also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendant committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts regarding the Subject iPhones and iOS updates, as set forth more fully herein.

57. Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§17200, *et seq*.

58. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased one of Defendant's Subject iPhones. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices. Their Subject iPhones' processing speed has been significantly reduced, apps and programs perform poorly. Plaintiff and the other Class members have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

59. Defendant knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing the Subject iPhones and, indeed, intended to deceive consumers.

60. As a result of its deception, Defendant has been able to reap unjust revenue and profit.

61. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

62. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution from Defendant of all money obtained from Plaintiff and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT III**

**Trespass to Chattels**

63. Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

64. Apple's conduct described above, in purposefully hampering the speed and performance of the Subject iPhones owned by Plaintiff and Class members, constitutes a trespass to chattels.

65. Through its iOS updates, Apple purposefully and secretly installed computer code on the Subject iPhones that was intended to and did burden, interfere with and hamper the speed and performance of Plaintiff's and the other Class members' Subject iPhones.

66. Apple's conduct in interfering with and hampering the speed and performance of the Subject iPhones was without consent or exceeded the consent given by Plaintiff and the other Class members.

67. As a result of Apple's trespass and interference, the Subject iPhones were harmed, Plaintiff and Class members lost use of the Subject iPhones, and Plaintiff and the other Class members have and continue to suffer damage in an amount to be determined at trial.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, individually and on behalf of all other Class members, respectfully requests that the Court enter judgment in Plaintiff's favor and an Order:

A. Certifying the Classes under Fed. R. Civ. P. 23 as requested herein, appointing Plaintiff as Class Representative, and undersigned counsel as Class Counsel;

B. Awarding Plaintiff and the other Class members damages, restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members;

C. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

D. Awarding Plaintiff and the other Class Members pre- and post-judgment interest on all amounts awarded;

E. Awarding attorneys' fees, litigation expenses, and costs of suit incurred through the trial and any appeals of this case; and

F. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury on all claims so triable.

Respectfully submitted,

Dated: January 5, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
TODD D. CARPENTER (234464)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619/762-1910
619/756-6991 (fax)
tcarpenter@carlsonlynch.com

CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP
EDWIN J. KILPELA, JR.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412/322-9243
412/231-0246 (fax)
ekilpela@carlsonlynch.com

BALKAN & PATTERSON, LLP
JOHN PATTERSON
601 S. Federal Highway, Suite 302
Boca Raton, FL 33432
Tel: 561/750-9191
561/750-1574 (fax)
john@balkanpatterson.com

*Attorneys for Plaintiff*